UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| EXPANSION CAPITAL GROUP, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>MATT PATTERSON,<br><br>Defendant. | 4:18-CV-04135-RAL<br><br>OPINION AND ORDER GRANTING MOTION TO AMEND |

Defendant Matt Patterson moves to amend his answer to assert the affirmative defense of "consent/waiver" to Plaintiff Expansion Capital Group, LLC's (ECG) claim for breach of fiduciary duty. Doc. 155. This Court grants the motion for the reasons explained below.

I.    Facts

In October 2018, ECG sued Patterson, its former chief executive officer (CEO), for breach of fiduciary duty, breach of contract or implied contract, and tortious interference with a business relationship. Doc. 1. Part of ECG's claim for breach of fiduciary duty rested on the operating agreements in place during Patterson's tenure as CEO. Doc. 1 at ¶¶ 67–69, 96–97. These agreements required approval from ECG's Board for transactions exceeding $50,000. Doc. 152 at 19. Among other things, ECG alleged that Patterson breached his fiduciary duty by overpaying an ECG investor named Dan Pham approximately $123,993 without obtaining Board approval and by failing to collect over $265,000 owed to ECG by entities owned by brothers Justin and Jason Abernathy. Doc. 1 at ¶¶ 67–69, 96–97.

1

This Court's initial scheduling order gave the parties until February 28, 2019, to amend their pleadings. Doc. 17 at 2. Later scheduling orders gave the parties until July 29, 2019, to complete written discovery and until August 31, 2020, to complete depositions. Doc. 23 at 2; Doc. 33 at 2; Doc. 100 at 2.

Patterson moved for summary judgment in July 2020, Doc. 101, and ECG moved for partial summary judgment the next month, Doc. 128. In briefing on the motions, ECG asserted that Patterson breached his fiduciary duty by failing to obtain Board approval for paying Pham and for waiving the fees owed by the Abernathy entities. Doc. 130 at ¶¶ 80–81; Doc. 117 at 23–26; Doc. 129 at 6–7, 14–15. ECG also claimed that Patterson breached his fiduciary duty by failing to obtain Board approval for several other expenditures exceeding $50,000, including: (a) a commitment for ECG to spend $104,479 on Minnesota Vikings season tickets; (b) a $60,000 agreement to pay for executive coaching for Patterson and another ECG employee through an entity called Vistage; (c) a commitment to spend $120,000 with Metric Theory for marketing; and (d) an unauthorized $60,000 call-center contract. Doc. 130 at ¶ 82; Doc. 117 at 23–26; Doc. 129 at 6–7, 14–15. ECG did not mention these other expenditures exceeding $50,000 in its complaint and never moved to amend its complaint to include these expenditures. See Doc. 1; see also Doc. 150 at 81–83; Doc. 152 at 21. Patterson sought summary judgment on the entirety of the breach of fiduciary duty claim, raising the business judgment rule as a defense. Doc. 152 at 15.

On January 22, 2021, this Court issued an opinion and order on the cross motions for summary judgment. Doc. 152. As relevant here, this Court rejected Patterson's business judgment rule defense, explaining that the rule "does not authorize officers to act directly contrary to the operating agreement, regardless of the officers' justification." Doc. 152 at 20.

On April 15, 2021, Patterson moved to amend his answer to assert the affirmative defense that ECG, through its conduct, waived the provisions of the operating agreements requiring Board approval for expenditures exceeding $50,000. Doc. 155. Patterson says that he will present evidence of many ECG capital expenditures exceeding $50,000 that did not receive Board approval. Doc. 155 at 2; Doc. 156 at ¶ 8. In Patterson's view, this evidence would show that ECG waived the Board-approval requirement. Patterson also requested leave to assert a defense that ECG consented to the expenditures exceeding $50,000 for which ECG now seeks to hold him liable. Doc. 155 at 2–3. This defense is based on testimony Patterson would provide at trial that Vincent Ney, an ECG Board member, was aware of and informally approved of the expenditures. Doc. 156 at ¶¶ 9–10; Doc. 155 at 2–3.

ECG opposed Patterson's motion to amend, pointing out that the deadline to amend the pleadings long ago elapsed and arguing that Patterson has not shown good cause to amend his answer. Doc. 157.

## II. Analysis

A party seeking to amend its answer outside the scheduling order must show good cause. Sherman v. Winco Fireworks, Inc. 532 F.3d 709, 716 (8th Cir. 2008). District courts have "wide authority and discretion" in deciding whether to grant a motion to amend filed after the deadline has passed. Wisland v. Admiral Beverage Corp., 119 F.3d 733, 737 (8th Cir. 1997). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Sherman, 532 F.3d at 716–17 (citation omitted). Courts in the Eighth Circuit "generally will not consider prejudice to the nonmovant if the movant has not been diligent in meeting the scheduling order's deadlines." Kmak Am. Century Cos., 873 F.3d 1030, 1034 (8th Cir. 2017) (cleaned up and citation omitted).

3

It would be difficult to find that Patterson diligently raised a waiver/consent defense to ECG's claims that he breached his fiduciary duty by failing to obtain Board approval to pay Pham or to waive the fees owed by the Abernathy entities. ECG explicitly pleaded these claims in its complaint over two years ago, Doc. 1 at ¶¶ 67–69, 96–97, and Patterson's explanation for failing to amend his answer before the February 28, 2019 deadline is hardly compelling. ECG's claims concerning the other expenditures exceeding $50,000 are a different matter, however. As explained above, ECG did not mention these other expenditures in its complaint and has not amended its complaint to expressly include them. See Doc. 1; see also Doc. 150 at 81–83; Doc. 152 at 21. Thus, the need to investigate these expenditures and develop defenses to them may not have become apparent to Patterson until later. Indeed, ECG's failure to plead these expenditures in its complaint was one of the reasons this Court denied ECG's motion for summary judgment on the other expenditures exceeding $50,000. Doc. 152 at 21.

Patterson explains that once this Court issued its opinion on the cross motions for summary judgment, he began trying to develop additional defenses to ECG's claims concerning the expenditures exceeding $50,000. Doc. 156 at ¶ 5. According to Patterson, he moved to amend his answer shortly after concluding that he had a viable defense of waiver/consent. Doc. 156 at ¶ 13. This Court finds that Patterson has shown diligence as to the other expenditures exceeding $50,000. See Wisland, 119 F.3d at 737 (holding that the district court did not abuse its discretion in granting a motion to amend filed nearly 8 months after the deadline passed where the relevance of the affirmative defense "may not have been immediately apparent at the outset of the litigation" given the procedural posture of the case).

ECG argues that Patterson's proposed amendment will cause it prejudice because it won't be able to depose Patterson or "any other departed officer" on the waiver/consent defense and

4

won't be able to challenge the defense on a motion for summary judgment. Doc. 157 at 3–4. However, ECG already possesses much of the evidence it would need to rebut Patterson's waiver defense. Patterson lists over a dozen transactions exceeding $50,000 and claims that the Board never approved them. Doc. 156 at ¶ 8. If the Board did, in fact, approve those transactions, ECG should have these approvals or be able to offer testimony from its Board members to that effect. And while ECG might not have had the chance to depose Patterson about the consent defense as fully as it would like, this Court will give ECG ample latitude at trial to cross-examine Patterson about any testimony that Ney approved of some of the transactions exceeding $50,000. Moreover, the consent defense should not come as a surprise to ECG. In denying summary judgment on ECG's claims concerning the other expenditures exceeding $50,000, this Court explained that there were questions of fact on whether these transactions "may have been later ratified in some manner by the Board." Doc. 152 at 22. In short, whatever prejudice ECG might assert does not justify denying Patterson's motion to amend.

This Court grants Patterson's motion to amend his answer. This is a fair approach given that ECG did not mention the other expenditures exceeding $50,000 in its complaint and never moved to amend its complaint to expressly include these expenditures. Although Patterson may not have been diligent as to the Pham and Abernathy transactions, he may assert the waiver/consent defense to these transactions as well. After all, the evidence on the waiver defense is the same for both the Pham and Abernathy transactions and the other transactions exceeding $50,000. The jury will thus be hearing this evidence in any event, and it could prove difficult for the jury to apply the waiver defense to some transactions but not others. Beyond that, Patterson's assertion that ECG consented to the Pham and Abernathy transactions is not new; he asserted a very similar claim in his summary judgment filings. Doc. 145 at ¶¶ 10–13.

### III.  Conclusion

For the reasons stated above, it is hereby

ORDERED that Patterson's Motion for Leave to File and Serve Amended Answer, Doc. 155, is granted. Patterson may file and serve the amended answer proposed in Doc. 155 at 7–11.

DATED this 27th day of May, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE
